S05G1725. THOMAS et al. v. GASTROENTEROLOGY ASSOCIATES OF GAINESVILLE, P.C. et al.
(632 SE2d 118)

THOMPSON, Justice.

This Court granted certiorari to the Court of Appeals in *Thomas v. Gastroenterology Assoc. of Gainesville*, 273 Ga. App. 618 (616 SE2d 455) (2005), to determine whether an expert's affidavit can satisfy the requirements of OCGA § 9-11-9.1 when the commission of the notary who attested the affidavit had expired. The short answer is "yes."

The facts giving rise to this appeal are as follows: On December 15, 2003, plaintiff filed a medical malpractice suit against a physician, his practice group, and a hospital, alleging that her husband died as a result of defendants' professional negligence. She attached

---

the affidavit of Dr. Brian D. Clarke to the suit. Dr. Clarke executed the affidavit in Indiana on October 28, 2003. The affidavit was notarized by Marilyn Sikkink, a notary public. The notarization was accompanied by a notary stamp which read: "My Commission Expires: October 8, 2003." On January 8, 2004, the physician and his practice group moved to dismiss the complaint, asserting that the expert's affidavit was invalid. Five days later, on January 13, a motion to dismiss was filed by the hospital. In its motion, the hospital expressly argued that the affidavit was invalid because it was not "signed in the presence of a notary public authorized by law to so act because the commission had expired."

Following the motion to dismiss, Ms. Sikkink initially reassured Dr. Clarke that she had completed her paperwork and that her commission had been extended for another five years. However, Ms. Sikkink subsequently learned that she was mistaken and that her commission had, in fact, expired.

On February 24, 2004, plaintiff secured another affidavit from Dr. Clarke with a valid notarization. This new affidavit was filed on March 5.

The trial court found that the affidavit was invalid and dismissed the complaint. The Court of Appeals affirmed, holding that plaintiff failed to file a properly notarized affidavit, but without discussing the applicability of the de facto notary doctrine. We granted certiorari and posed this question: Did the trial court err by dismissing the complaint because the expert affidavit, filed pursuant to OCGA § 9-11-9.1, was notarized by a notary whose commission had expired?

Under our law, when a plaintiff files a professional malpractice action, she must attach the affidavit of an expert setting out the act of negligence underlying her claim. OCGA § 9-11-9.1. If she fails to do so, and the defendant moves to dismiss, alleging with specificity that the affidavit is defective, the complaint is subject to dismissal unless the plaintiff cures the alleged defect by filing an amendment within 30 days of service of the motion to dismiss. OCGA § 9-11-9.1 (c).[1] Thus, the question for decision in this case is whether Dr. Clarke's original affidavit was defective. If it was, the complaint was dismissed properly because plaintiff failed to cure the defect within 30 days of service of defendants' motions to dismiss or to seek an extension of time to file an amendment.

Plaintiff argues that Dr. Clarke's original affidavit should be deemed to be valid under the de facto notary doctrine and that, therefore, her complaint should not have been dismissed. She points

---

[1] The trial court may, in the exercise of discretion, extend the time for filing the amendment.

out that the doctrine was applied previously by the Court of Appeals in this very context, i.e., where a professional malpractice affidavit was attested by a notary whose commission had expired, *Piedmont Hosp. v. Draper*, 205 Ga. App. 160 (421 SE2d 543) (1992), and she asserts it should be applied here as well.

In *Piedmont Hosp.*, plaintiff filed a medical malpractice affidavit[2] which met the substantive statutory requirements; but the commission of the notary who attested the affidavit had expired. Thereafter, plaintiff sought additional time to file a properly notarized affidavit and the trial court granted an extra several days. The Court of Appeals determined that the trial court did not abuse its discretion in allowing the additional time. But, more significantly, the appellate court noted that the request for an extension of time was unnecessary because the original affidavit was valid. In this regard, the appellate court made it clear that the de facto notary doctrine gave validity to the act of attestation. Id. at 163. In reaching its ruling, the Court of Appeals relied upon *Smith & Bondurant v. Meador*, 74 Ga. 416 (1885), the seminal de facto notary case in this state.

In *Smith & Bondurant*, a deed was notarized by a notary whose commission had expired a few days before the act of attestation, and before his appointment was renewed. The Court upheld the deed on two bases, de jure and de facto. Insofar as the Court found the deed to be valid on a de jure basis, it noted that the notary was to remain in office until a successor took his place. As to the de facto basis, the Court continued:

> But suppose he was not de jure a public officer, was he not de facto such, and his acts good, when done in good faith by him for any of the public also acting in good faith? We think so most clearly. These de facto officers, their official acts, colore officii, must be recognized for public safety. The security of property, the vital interests of society, demand the recognition of their acts. It has been our law, or rather, that of our ancestors, ever since the War of the Roses in England, when the king, the fountain of office there, was changed by the winds of revolution, and with him, his appointees were swept from rightful or de jure offices, but all their acts while in office were held binding and valid — made so by statute and observed by both sides — all being recognized as de facto officers. . . . The principle on which the whole doctrine of the recognition of de facto officers and their acts rests, is not how

---

[2] Plaintiff actually filed two medical malpractice affidavits in *Piedmont Hosp.* The appellate court's focus was on the affidavit of Dr. Kriegsman.

they happen to act de facto, — whether the cause be an illegal appointment or election, or an illegal holding over, but it is the convenience of the public — the necessity of the thing — the impossibility of one always knowing when an officer to whom he goes on business of a ministerial character is legally in office, was properly elected or has held too long; it is that, where the public servant is acting in the place apparently all right, and the applicant to him in good faith has a deed witnessed or an oath administered, that it is better for society that the act de facto stand than that the business of society, the title to property be all wrecked, because parties did not know that the term of office of the public official expired the day before.

Id. at 418-419.

This rationale was employed by our courts in other cases of this kind. See, e.g., *Wood v. Cauthen*, 168 Ga. 766 (149 SE 138) (1929) (expiration of notary's commission did not invalidate deed); *Adair v. McElreath*, 167 Ga. 294, 314 (145 SE 841) (1928) (expiration of notary's commission did not invalidate candidate's filing statement); *Penn & Watson v. McGhee*, 6 Ga. App. 631 (65 SE 686) (1909) (expiration of notary's commission did not invalidate verification of amendment).

We recognize that the attestation in this case was accompanied by a recital that the notary's commission expired almost three weeks previously. But it is the notary's act of attestation, not the presence of the recital, which gives rise to the validity of the affidavit. See OCGA § 24-4-41 ("An officer de facto may be proved to be such by his acts, without the production of his commission or appointment."). As the Court noted in *Wood v. Cauthen*, supra at 768:

We will not take the mere recital, "My commission expires February 26, 1926," as evidence that the commission of the official witness had actually expired; for . . . the signature of the official witness was followed by a seal and on the face of it the execution of the paper was regular.

In light of the foregoing discussion and well-established case law, we answer the question posed upon the grant of certiorari in the affirmative: The trial court erred in dismissing the complaint on the ground that the expert's affidavit was not notarized. It follows that the judgment of the Court of Appeals was in error and must be reversed.

*Judgment reversed. All the Justices concur.*

DECIDED JULY 6, 2006.

*Gambrell & Stolz, Charles M. Cork III, Steven L. Beard*, for appellants.

*Forrester & Brim, James E. Brim III, Whelchel & Dunlap, Thomas M. Cole*, for appellees.

*Pope & Howard, J. Marcus Howard*, amicus curiae.